## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## Wheeling

**AXIALL CORPORATION,**

        Plaintiff,

v.                                                                                          **Civil Action No. 5:20-CV-117**
                                                                                           Judge Bailey

**INTERNATIONAL CHEMICAL
WORKERS UNION COUNCIL
OF THE UNITED FOOD AND
COMMERCIAL WORKERS AND
THE INTERNATIONAL CHEMICAL
WORKERS COUNCIL OF THE
UNITED FOOD AND COMMERCIAL
WORKERS, LOCAL UNION NO. 45C,**

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

      Pending before this Court are two competing motions–defendant Unions' Motion for Summary Judgment [Doc. 23], filed on December 8, 2020; and Plaintiff's Motion for Summary Judgment [Doc. 25], filed on December 8, 2020. The parties filed attached Memoranda in Support of their respective Motions. See [Docs. 24 & 26]. The parties filed respective Responses [Docs. 27 & 28] on January 5, 2021, and respective Replies [Docs. 29 & 30] on January 19, 2021. The parties also filed a Joint Stipulation of Record [Doc. 22] and a Joint Stipulation of Supplement to Record [Doc. 31]. For the reasons contained herein, this Court will grant defendants' motion and deny plaintiff's motion.

1

## BACKGROUND

The underlying facts of this litigation are largely uncontested. Plaintiff Axiall Corporation, a Westlake Company, operates a chemical manufacturing plant in Natrium, West Virginia. See [Doc. 22-1 at 10]. The plant sits on a salt bed, and plaintiff extracts the salt from the ground to make various chemical products. [Id.]. Plaintiff employed Michael McGovern as an "E-Man" in the Cal-Hypo-Department at the subject plant. [Id. at 11].

On January 22, 2019, McGovern pled guilty to the following charges stemming from an incident in which he intentionally set fire at his bar: (1) Second Degree Arson; (2) Conspiracy to Commit Second Degree Arson; (3) Fourth Degree Arson; (4) Burning or Attempting to Burn Insured Property; and (5) Attempted Insurance Fraud. [Id. at 416–417; 468–487]. As a result, Marshall County Circuit Court Judge David Hummel sentenced McGovern to a term of imprisonment, and McGovern was incarcerated from March 19, 2019, till August 13, 2019. [Id. at 433–435].

Upon learning of McGovern's sentencing, plaintiff placed him on paid suspension pending an internal investigation. [Id. at 436]. After conducting an investigation and consulting with corporate human resources and in-house counsel, plaintiff discharged McGovern from his employment at the plant. [Id. at 11]. In addition to identifying each of McGovern's five criminal charges, a termination letter sent to McGovern by plaintiff provided as follows:

> Judge Hummel, who sentenced you, rejected your attorney's proposal for a less severe sentence and found that your conduct was abhorrent and repugnant. He found that you committed a violent crime. You intended to burn the bar, while leaving the natural gas on, so that it would burn to the ground or blow up. The judge did not view this as "a regular arson," but rather, he pointed out that the gas valves were all open, and it was going to be "explosive." The judge found that you planned this to happen. This exposed at least two dozen volunteer

2

firefighters--and an unknown number of deputy sheriffs and first responders--to the risk of serious injury or death. Even you conceded at your sentencing hearing that your actions were "drastic and detrimental to all involved," and "people... could have been injured." Importantly, the judge noted that "[n]ot incarcerating you may or could encourage similar criminal activity."

As you also know, the health and safety of our employees and our communities is one of Westlake's core values. Westlake is obligated to protect the safety of its employees, vendors, contractors and visitors that enter its property as well as the general public against harm that could be caused by damage to its manufacturing facility or from any other threat of harm. The underlying intentional and criminal acts for which you have been sentenced make you unqualified and unfit to work at our plant. You have admitted to committing arson and to attempting to financially benefit from the same. Therefore, Westlake cannot continue to employ a known, admitted arsonist in its own chemical plant, where flammable and dangerous chemicals are present, due to the safety concerns and liability risks created.

Additionally, and as an independent second reason for discharge, Westlake has the right to protect its business reputation, which would very likely be harmed by employing an admitted arsonist, who put lives in jeopardy, as part of a scheme to defraud an insurance carrier. Judge Hummel rightly observed that the firefighters who reported to the fire, which you intended to be "explosive," left their families, didn't know if they were coming back home, and didn't get paid for their efforts to stop the fire while you wanted to cash out. Westlake's reputation would be harmed for employing a known, admitted arsonist in our chemical plant who exposed innocent lives in the community to serious injury or death.

A third independent reason for discharge is the public display of dishonesty in pleading guilty to your attempt to defraud an insurance carrier. Indeed, the judge observed that even in your three-and-a-half hour interview during the state's investigation of the fire, you lied for 2 ½ hours. We depend upon the honesty of our employees in running our chemical plant.

Your sentence also renders you unqualified for the position as E-Man. Under the Rules Covering The Operation of the Plant--Rules for Absentee Control, you are subject to termination upon incurring nine (9) chargeable occurrences, which will occur upon your reporting to prison to serve your sentence, or alternatively, you are subject to termination when you are "absent...from work for a period of seven (7) consecutive days and without justifiable cause [do] not personally or in writing notify [your] supervisor or the Personnel Department." (CBA Article XIII, Section A. Seniority, paragraph 4(d).

3

> While your felonious actions did not occur at work, they most assuredly affect your employment as outlined above, and they constitute just cause for discharge. Accordingly, you have given us no choice by to terminate your employment.

[Id. at 602–603].

Plaintiff and defendants were parties to a collective bargaining agreement ("CBA"), which provides for a grievance procedure ultimately resulting in binding arbitration. [Id. at 465–471]. Given that McGovern was a bargaining-unit member, defendants filed a grievance on his behalf concerning the propriety of his termination. [Id. at 627]. The parties did not resolve the grievance and, as a result, an arbitration hearing took place on February 5, 2020, before Arbitrator Charles S. Dunn ("arbitrator"). See [Doc. 22-1]. On May 13, 2020, the arbitrator rendered his Opinion and Award, which sustained defendants' grievance and ordered McGovern to be reinstated with back pay and benefits. [Id.].

On or around June 3, 2020, plaintiff invoked the arbitrator's retained jurisdiction in order to seek clarification of the remedy, and the parties submitted supplemental briefing. [Id.]. However, prior to ruling on the supplemental briefing, the arbitrator passed away. [Id.]. To date, plaintiff has not complied with the award and has filed its Complaint [Doc. 1] seeking this Court to vacate the award. Defendants then filed their Answer and Counterclaim [Doc. 11] arguing that this Court should confirm and enforce the award.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When cross-motions for summary judgment are before a district court, as here, the same standards of review are applied. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983). Each motion must be considered individually on its own merits, and the facts relevant to each must be viewed in the light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). When considering each individual motion, the court must take care to

5

"resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *Rossignol*, 316 F.3d at 523 (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## DISCUSSION

A review of the pleadings indicates that plaintiff seeks this Court to overturn the arbitrator's award. The Fourth Circuit "has repeated, time and again, that, judicial review of arbitration awards is extremely limited–in fact, it is among the narrowest known to the law." *Washington Gas Light Co. v. Int'l Brotherhood of Teamsters, Local 96*, 594 F. App'x 774, 779 (4th Cir. 2014) (quotations omitted) (citing *U.S. Postal Serv. v. American Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000)).

Indeed, the Supreme Court has recently explained that "[j]udicial review of a labor-arbitration decision" is not merely limited but "very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam). A court must "determine only whether the arbitrator did his job–not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996).

In another case involving the subject plant, the Fourth Circuit explained:

We have consistently observed that "arbitration must be final to be effective. Permitting judicial second-guessing of arbitral awards would transform a binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike."

6

*ICWUC & Its Local Union 45C v. PPG Industries, Inc.*, 97 F. App'x 400, 403 (4th Cir. 2004) (citations omitted).

In deciding whether the arbitrator "did his job," any reasonable doubt on this matter "must be resolved in favor of enforcing the award." *Ethyl Corp. v. USWA*, 768 F.2d 180, 185 (7th Cir. 1985) (citing *USW v. Enterprise Wheel & Car*, 363 U.S. 593, 597–598 (1960)). Applying this principle, the Fourth Circuit has recognized that "[e]very presumption is in favor of the validity of the award." *Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Comm'ns Int'l Union*, 973 F.2d 276, 278 (4th Cir. 1992).

When reviewing an arbitrator's award entered pursuant to a collective bargaining agreement, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 30 (1987). "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Garvey*, 532 U.S. at 509 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

This Court has reviewed the motions before it and the arbitrator's opinion and finds no basis for vacating the arbitrator's award. Although plaintiff asserts several arguments in support of its position, it is clear that plaintiff is merely attempting to relitigate the matter because it disagrees with the findings of the arbitrator.

### A. Plaintiff's Arguments

#### I. Public Policy

First, plaintiff asserts that the arbitrator's award should be overturned because the arbitrator's decision "clearly violates public policy." See [Doc. 26 at 16]. More specifically, plaintiff asserts that reinstating defendant, a convicted arsonist, to its facility containing flammable and dangerous chemicals creates a dangerous and unsafe situation for its other employees. [Id.]. However, the arbitrator considered these factors surrounding defendant's reinstatement and determined that McGovern had never been shown to be a safety hazard at work. See [Doc. 27 at 5]. Moreover, the arbitrator concluded that McGovern did not pose a unique risk to plaintiff's business due to his criminal conviction. [Id.]. In making such conclusions, the arbitrator acted within the scope of his authority in applying the CBA, and this Court will not overturn the award based on plaintiff's public policy argument.

#### II. The Arbitrator's Personal Opinion

Next, plaintiff asserts that this Court should overturn the arbitrator's award because it "fails to draw its essence from the collective bargaining agreement" and "reflects merely the arbitrator's personal notions of right and wrong." See [Doc. 26 at 22]. In support, plaintiff argues that the arbitrator disregarded Judge Hummel's findings that McGovern's underlying criminal conduct was "abhorrent and repugnant[.]" [Id. at 23]. According to plaintiff, it relied on Judge Hummel's findings when it determined to discharge McGovern. [Id.]. Plaintiff contends that the arbitrator improperly dismissed Judge Hummel's findings and substituted his own notions of right and wrong when entering the award. [Id.]. This Court disagrees.

8

As identified by defendants, the evidentiary and procedural backgrounds underlying this case, including Judge Hummel's findings related to the underlying criminal matter, were considered by the arbitrator. However, the record indicates that the arbitrator considered those findings and found them unpersuasive when considering other work-related evidence–namely, that plaintiff allowed McGovern to return to work after the underlying criminal conduct but prior to his plea. As identified by defendants, this Court does not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts, and this Court declines to revisit the arbitrator's findings in this regard. See *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987) ("To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.").

## B. Clarification of the Award

Having rejected plaintiff's arguments concerning the validity of the award, this Court turns to plaintiff's argument concerning the purported need for clarification of the award. Specifically, the arbitrator concluded that McGovern was to be reinstated with back pay and benefits for the time he ought to have been working. However, plaintiff contends that McGovern's five-month incarceration from March 19, 2019, until August 13, 2019, is evidence of post-discharge conduct which precludes the award of back pay during this time frame. See [Doc. 28 at 15]. As such, plaintiff contends it is entitled to a set-off in back pay based on

9

McGovern's period of incarceration. [Id.]. This Court declines to revisit the award concerning reinstatement and back pay.

As identified by defendants, plaintiff had the opportunity to raise these arguments during the arbitration hearing and post-hearing briefing, and the award cannot be modified or clarified based on these arguments. *See* [Doc. 29 at 14–15]; *see also Barranco v. 3d Systems Corp.*, 734 F.App'x. 885, 889 (4th Cir. 2018) ("[A]n arbitrator may correct clerical, typographical, or computational errors in a final award, [but] has no power to revisit the merits of the award after it has issued.").

## C. Attorney Fees

Having determined that the arbitrator's award is sufficiently final and subject to enforcement in full, this Court now turns to defendants' request for attorney fees. Generally, attorney fees are not recoverable. The so-called American Rule does not allow for awards of attorney fees unless there is a fee-shifting statute or an enforceable contract providing for attorneys' fees. *See Summit Valley Indus. Inc. v. Local 112, United Brotherhood of Carpenters & Joiners of Am.*, 456 U.S. 717, 721 (1982); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967). When and where awards for attorney fees are appropriate are "matters for Congress to determine." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 262 (1975). In the absence of a statute pertaining to attorney fees, however, the Supreme Court and the Fourth Circuit have endorsed certain exceptions based on courts' inherent equitable powers for imposing attorney fee awards. *See Summit Valley*, 456 U.S. at 721; *United Food & Com. Workers, Local 400 v. Marval*

*Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989). Awards for fees are appropriate in labor relations actions "against a party who, without justification, refuses to abide by an arbitrator's award." *Local 149, Auto. Workers of America v. American Brake Shoe Co.*, 298 F.2d 212, 216 (4th Cir.1962); *see also Marval*, 876 F.2d at 350 (holding that *Aleyska* did not prohibit courts from awarding attorney fees based on the courts' inherent equitable power as established in *American Brake Shoe*). The Fourth Circuit has defined "without justification" as "vexatious" or "willful disobedience of a court order." *See Marval*, 876 F.2d at 350.

Determining whether a challenge to an arbitration award is "without justification" depends on the focus of that challenge.

> Where a challenge goes to the fundamental issues of arbitrability or of whether an arbitration award "draws its essence" from the contract, the standard for assessing its justification is indeed the relatively lenient one of whether it has "any arguable basis in law." . . . Where, however, the challenge goes not to issues of the fundamental power of an arbitrator to make an award but to the merits of an arbitrator's award as made, the standard of justification is much more stringent. Indeed, because such challenges, if undeterred, inevitably thwart the national labor policy favoring arbitration, they must be considered presumptively unjustified.

*Id.* at 351. Precedent within the Fourth Circuit shows that even though challenges to the merits of arbitration awards are "presumptively unjustified," the actual burden to prove justification is lower than the standard seems. *See Storck Baking Co. v. Bakers Local 57*, 847 F. Supp.

11

43, 44 (S.D. W.Va. 1994) (Haden, C.J.) (holding that even where a party filed suit in court when they had a duty to arbitrate, that did not rise to the level of vexatiousness to award attorney fees). Although this Court has rejected plaintiff's arguments, it finds that plaintiff has met the aforementioned standard of justification in bringing the pending suit. As such, this Court declines to award attorney fees to defendants.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment **[Doc. 25]** is **DENIED**. Defendant Unions' Motion for Summary Judgment **[Doc. 23]** is **GRANTED**. Accordingly, this Court **ORDERS** the Arbitration Award be **ENFORCED**. The Clerk is directed to enter judgment in favor of the defendants and **STRIKE** this matter from the active docket of the Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** February **16**, 2021.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**